IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| **MARK DICKERSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. 3:07-1272** |
| | ) | |
| **AMERIQUEST MORTGAGE ,** | ) | **Judge Wiseman** |
| **COMPANY and CITI RESIDENTIAL** | ) | **Magistrate Judge Griffin** |
| **LENDING** | ) | |
| | ) | **Jury Demand** |
| **Defendants.** | ) | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE TO MOTION DISMISS FILED BY DEFENDATS

---

### I. <u>INTRODUCTION</u>

This memorandum is filed in support of Plaintiffs' Response to the Motion to

Dismiss filed by Defendants Ameriquest Mortgage Company and Citi Residential Lending.

Defendants have moved the Court to dismiss all Truth-in-Lending-Act (TILA) counts in the

complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Furthermore, Defendants have moved the court

to dismiss Plaintiff's fraud claims pursuant to Rule 9(b).

### II. <u>STANDARD OF REVIEW</u>

The Court of Appeals for the Sixth Circuit has stated the standard for review of a motion

filed under Rule 12(b)(6) as follows:

> "This Court must construe the complaint in the light most
> favorable to the plaintiffs, accept all factual allegations as true, and

> determine whether the plaintiff undoubtedly can prove no set of
> facts in support of their claim that will entitle them to relief."

*See In re* Delorian Motor Company, 991 F.2d 1236, 1240 (6th Cir. 1993); *Nayer v. Mylod*, 988 F.

2d 635, 638 (6th Cir. 1993).

As discussed herein, Plaintiff through his complaint has stated a claim, which if proved,

will entitle him to relief under the Truth-in-Lending Act as to the Defendants.

### III.  TRUTH IN LENDING ISSUES

**A. Plaintiff's TILA Claims Remain Within the Three-Year Period for Rescission Set Forth in 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3)**

The Truth-in-Lending Act establishes a right of rescission for any loan transaction in

which the borrower's principal dwelling is used as security.  15 U.S.C. § 1635(a).  The United

States Supreme Court has directed the courts to give deference to the interpretations of the Truth-

in-Lending Act as promulgated by the Federal Reserve Board through the implementing

regulation, Regulation Z.  *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981).  Both

TILA and Regulation Z provide that the obligor shall have the right to rescind the contract until

"midnight of the third business day following consummation [of the loan], delivery of the notice

[right to rescind], or delivery of all material disclosures, whichever occurs last.  If the required

notice or material disclosures are not delivered, the right to rescind shall expire three years after

consummation."  12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f).

Plaintiff obtained a residential real estate mortgage loan from Ameriquest in September,

2005.  (Docket Entry No. 1, Compl. ¶ 12.)  Defendant Ameriquest failed to deliver the required

notice and all material disclosures to Plaintiff (*id*. at ¶ 16) thereby extending Plaintiff's right of

rescission to three years from consummation of the loan.  Plaintiff, through counsel, rescinded

the loan on September 24, 2007 (*id*. at ¶ 24), well within the three-year period for rescission.

2

Based on these facts, any attempt by Defendants to dismiss Plaintiff's claim for failure to comply with the applicable statute of limitations fails.

## B.  Defendant Failed to Enter Dates on the Notice of Right to Cancel, Thus Triggering the Three-Year Extension of the Right to Rescind

Plaintiff's copy of the Notice of Right to Cancel, a copy of which is attached to this Memorandum as Exhibit 1, is blank as to the Final Date to Cancel. [1]   Failure of Defendant to fill in this date automatically triggers the three-year extension of the right to rescind set forth in 15 U.S.C. § 1635(f).

### i. TILA and Regulation Z State That the Rescission Date
### Must be Clearly and Conspicuously Disclosed

Section 1635(a) of TILA states that creditors are required to "clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section."  15 U.S.C. § 1635(a).

The regulations of the Board with respect to the right of rescission are set forth in Regulation Z, at 12 C.F.R. § 226.23(b):

> (b) *Notice of right to rescind.*  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document

---

[1] This raises the interesting question as to why the lender's file, at this date, over two years after the consummation of the loan, contains a properly completed document, whereas the copy provided to the borrower at the time contains a non-complying notice.  Premised upon the fact that someone completed the documents in the file after the closing, the questions remain as to why that was done and who considered it important for the lender's file to have dates included but not the borrower's file?  Why would someone fill in the dates after the borrower could not longer see the form?

that identifies the transaction and shall clearly and conspicuously disclose
the following:

(1) The retention or acquisition of a security interest in the consumer's
principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose,
designating the address of the creditor's place of business.

(4) the effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

Regulation Z explicitly requires clear and conspicuous disclosure of the date the three-day

rescission period expires.  Reg. Z. § 226.23(b)(1)(v).  *See also* Official Staff Commentary §

226.23(b)-3 (notice must include all information outlined in Reg. Z sec 226.23(b)(1)(i)-(v)).

### ii.  *Case Law Makes it Clear that if the Final Date to Cancel is Left Blank,*

### *the Clear and Conspicuous Requirement Is Not Met*

A wealth of case law exists[2] indicating that failure to fill in the date the rescission period

violates the clear and conspicuous requirement of TILA and Regulation Z and therefore

automatically triggers the three-year extension of the right to rescind.  *Reynolds v. D. & N. Bank*,

792 F. Supp. 1035 (E.D. Mich. 1992), is the most recent reported case in the Sixth Circuit to

directly address this issue.  In *Reynolds,* as in the present case, defendants failed to fill in the date

---

[2] *See, e.g. Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986)
(rescission notice that omitted expiration date, although it stated that right expired three business
days after July 16, was violation); *Williamson v. Lafferty*, 698 F.2d 767 (5th Cir. 1983) (failure to
fill in expiration date violated TILA; pre-Simplification transaction, but remains valid
precedent); *New Nat'l Bank v. Gendron*, 780 F. Supp. 52 (D. Me. 1991) (rescission right is
extended when expiration date has been omitted); *Mayfield v. Vanguard Sav. & Loan Ass'n.*, 710
F. Supp. 143, 146 (E.D. Pa. 1989); *Aquino v. Public Fin. Consumer Discount*, 606 F. Supp. 504
(E.D. Pa. 1985) (no expiration date in notice).

upon which the right of rescission period expired.  The *Reynolds* defendants did manage to fill in the date of transaction on the Notice of Right to Cancel, but the Court found that insufficient:

> Fourth, the notice provided fails to disclose the date upon which the right of rescission period expires.  Such a disclosure is required by 12 C.F.R. § 226.23(b)(5).  Although defendant's notice has provided a line on which the date by which the notice of rescission must be sent, defendant failed to fill in the date. Merely providing the date of transaction followed by the statement that "You may cancel this transaction, without penalty or obligation, within three (3) business days from the above date" does not comply with the regulation, particularly when the notice provides for the date to be entered on a separate line which is left blank.

In the present case, Defendants likewise provided a line on which the date by which the notice of rescission must be sent and failed to fill in that date.  In addition, Defendants in this case did not even fill out the transaction date, moving the facts of this case ever further from the clear and conspicuous requirement.

In a recent, unreported case, a court within the Sixth Circuit addressed this same issue.  In *Deans v. Long Beach Mortgage Co.*, No. 1:07-CV-205, 2007 WL 772892 (W.D. Mich. Mar. 12, 2007) (unpublished)[3] the Western District of Michigan granted an Ex Parte Motion for Temporary Restraining Order to enjoin the foreclosure of plaintiff's home.  *Deans*, 2007 WL 772892 at *1.  The Court, relying heavily on *Reynolds*, *id*., found that plaintiff had "shown a strong or substantial likelihood or probability of success on the merits" based on plaintiff's TILA claim, the sole grounds for which was that the Notice of Right to Cancel was "devoid of the date of the transaction as well as the date upon which the right of rescission expired – both lines are left blank."  *Id.* at *2.  Likewise, Plaintiff in this case, has not only stated a claim which entitles him to relief, but has shown a strong and substantial likelihood that he will succeed on the merits of this claim

---

[3] In accordance with the rules of this Court and the Sixth Circuit Court of Appeals, the entire text of this opinion is affixed to this memorandum as Exhibit 2.

*iii.  The Purpose Behind the Safe Harbor Provision in the Statute and in Regulation Z Is Defeated if Creditors May Fill Out Model Forms Improperly*

The Board of Governors included model Notice of Right to Cancel forms in the Appendix to Regulation Z in order to afford creditors with a safe harbor when providing consumers with closed-end credit disclosures.  *See* Reg. Z. Appx. H.  Regulation Z 12 C.F.R. § 226.23(b) states that:

> (2) *Proper form of notice.*  To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice.

15 U.S.C. § 1635(b) completes the "safe harbor" for the creditor by stating that an obligor does not have any rescission rights arising solely from the form of the rescission notice if the creditor used the appropriate model form "that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice." To create a safe harbor and then to excuse creditors who fail to fill out a model form properly would be an impermissible expansion of this very specific defense provided to creditors in 1635(b).[4]

In the present case, Plaintiff has not alleged that Defendants used an improper form. Rather Plaintiff contends that Defendants have used the form improperly by failing to provide the required information.   Defendants failed to fill in the required dates, thereby creating a material violation of TILA and triggering the three-year extension of the right to rescind.

*iv.  Defendants' Reliance on <u>Mills</u> Is Misplaced*

Defendants, in their Motion to Dismiss, state that the "Sixth Circuit's opinion in *Mills v. Equicredit Corp.*, 172 F. Appx. 652 (6th Cir. 2006) (unpublished) is instructive as to the facts

---

[4] Case law does provide for typographical errors on these forms, as distinct from using the forms improperly, e.g. by omitting the date.  *See e.g.* Groat v. Carlson (*In re* Groat), 369 B.R. 413, 2007 WL 1500050 (B.A.P. 8th Cir. May 24, 2007) (typographical error, stating that deadline for cancellation was in 2001 instead of 2002, was bona fide error).

alleged at bar." (Docket Entry No. 28, Mem. in Supp. of Defs.' Mot. to Dismiss, p. 5.)  As

discussed in Section *iii*, supra, the Appendix to Regulation Z makes available to creditors model

forms that, if used properly, provide a safe harbor for creditors against certain rescission claims.

The plaintiffs in *Mills* argued that use of the incorrect model form constituted a material mis-

disclosure which triggered the three-year right to rescission.  *Mills*, 172 F. Appx. at 654.  The

*Mills* court stated, without discussion, that the use of the wrong form did not matter because the

form was signed by plaintiffs and still "informed [the Plaintiffs] of their right to cancel the loan

transaction."  *Id*. at 657.  Defendants in the case at bar argue that because Plaintiff signed the

Notice of Right to Cancel he was similarly informed of his right to cancel the loan transaction.

(Mem. in Supp., p. 6.)

      Defendants' reliance on *Mills* is entirely misplaced.  *Mills* is simply one in a long line of

cases that have split the Circuit courts regarding the use of certain model forms.[5]  The case at

hand is a "blank forms" and "inadequate number of forms" case, <u>not</u> a "model forms" case.  In

brief, the "model forms" cases surround fact patterns in which form H-8, as provided in the

Appendix to Regulation Z, is provided to borrowers rather than form H-9.  The question in these

cases is whether the use of the wrong form does or does not violate the "clear and conspicuous"

requirement of the statute and regulations.[6]  When the *Mills* court states that use of the wrong

form still "informed [the Plaintiffs] of their right to cancel the loan transaction," *Mills*, 172 F.

Appx. at 657, it is simply re-iterating the District Court's wording without discussion of why the

form does or does not violate the clear and conspicuous requirement.  *See id.*  The District Court,

---

[5] *See e.g. Porter v. Mid-Penn Consumer Discount*, 961 F.2d 1066 (3d Cir. 1992); *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12 (1st Cir. 2007); *In re* Michel, 140 B.R. 92 (Bankr. E.D. Pa. 1992); *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278 (N.D. Cal. 2002) (noting that, even if technical form violation is insufficient to extend rescission period, this error is substantively misleading); *In re Botelho*, 195 B.R. 558 (D. Mass. 1996); *Stanley v. Household Fin. Corp.* (*In re* Stanley), 315 B.R. 602 (Bankr. D. Kan. 2004).
[6] *See e.g.* i*d.*

likewise does not acknowledge that there is a genuine issue being debated throughout the circuits about the use of these forms. *See Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903 (E.D. Mich. 2003). Instead, the District Court summarily decided that since the plaintiffs signed the forms, they were therefore "informed" of their right to cancel. *See id* at 910.

The *Mills* courts miss the bigger picture. It does not matter whether an obligor is subjectively "informed" of his or her rights. What matters in TILA cases, is whether the creditor objectively complied with the statute and regulations in providing the required disclosures in the required manner. Defendants in this case argue that because Plaintiff was provided a Notice of Right to Cancel form, that he was therefore provided "notice of his rescission right." (Mem. in Supp., p.4.) Defendants confuse the notion of whether Plaintiff was subjectively on adequate notice of his right with the creditor's objective responsibility to provide loan documents free of statutory defects. The issue is not whether or not Plaintiff was provided a form; the issue is whether the final right to cancel date was provided on the Notice of Right to Cancel and whether the required number of notices were provided. In TILA rescission cases, there is no concept of "adequacy of notice." Either a creditor is in compliance or is not in compliance. The Complaint in this case shows that Defendants were not in compliance.

**C. Defendant Failed to Provide Plaintiff with Required Number of Right to Cancel Notices, Thus Triggering the Three Year Right to Cancel**

Regulation Z, 12 C.F.R. § 226.23(b)(1) requires that a creditor "deliver two (2) copies of the notice of right to rescind to each consumer entitled to rescind." There is good reason underlying the decision of the Federal Reserve Board to require that each obligor be given two copies of the right to rescind notice:

> TILA's requirement of two rescission notice copies to each obligor is not a mere technicality. Effective exercise of the right to rescind obviously depends upon the delivery of one copy of the rescission form to the creditor and the retention by the obligor of the other copy.

8

*Stone v. Mehlberg*, 728 F. Supp. 1341, Suppl. Op. at 1352, 1353 (W.D. Mich. 1990),

1990 U.S. Dist. LEXIS 254, January 3, 1990.

  The United States Court of Appeals for the Sixth Circuit has stated clearly that the

obligation of the creditor to provide two copies of the right to cancel notice to each debtor will be

enforced strictly, and that failure to do so triggers the three-year right to rescind.  *Weeden v. Auto*

*Workers Credit Union*, No. 97-3073, 173 F.3d 857 (Table), 1999 WL 191430 (6th Cir. Mar. 19,

1999), unpublished opinion filed March 19, 1999.[7]  In *Weeden*, the Sixth Circuit panel reversed a

judgment entered previously in favor of the creditor on the grounds that the creditor had not

provided the borrowers with two copies of the right to rescind.  As stated by the Court:

> As it turns out, we need not resolve this dispute because we conclude that
> judgment should have been granted in favor of the plaintiffs on a different
> and more certain basis, i.e., that the Credit Union failed to give the
> Weedens the proper number of notices of the right to rescind.  This failure
> to deliver the notices extends the rescission period for three years from the
> date of the transaction….
>
> Under TILA regulations, a creditor is required to "deliver 2 copies of the
> notice of the right to rescind to each consumer entitled to rescind."  12
> C.F.R. § 226.23(b)(1).  "If the required notice or material disclosures are
> not delivered, the right to rescind shall expire three years after
> consummation."  12 C.F.R. § 226.23(a)(3).
>
> Although we have not previously addressed the specific issue in this case,
> we have joined other federal courts of appeals in holding that the Truth-in-
> Lending Act must be liberally construed in favor of the borrower in order
> to effectuate the purpose of the statute – to avoid the uninformed use of
> credit.  See e.g., *Purite v. Elridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th
> Cir. 1996), cert. denied, 520 U.S. 1252, 117 S. Ct. 2411, 138 L. Ed. 2d
> 177 (1997); *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989); *Mars v.*
> *Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983).
> Even technical or minor violations of the Act impose liability on the
> lender.  See *Jackson*, 890 F.2d at 120.

---

[7] In accordance with the rules of this Court and the Sixth Circuit Court of Appeals, the entire text
of this opinion is affixed to this memorandum as Exhibit 3.

*Weeden*, 1999 WL 191430 at \*4.  As stated in the complaint, Plaintiff received only one (1) copy of the right to cancel notice at the time of closing, and he has rescinded the transaction with respect to defendants.  Clearly he has stated a claim which would entitle him to relief, i.e., enforcement of the rescission remedy.

The rebuttable presumption created by the inclusion in the right to cancel form signed by Plaintiff reciting that he received two copies of the right to cancel notice has the effect described in both the TILA at 15 U.S.C. § 1635(c)and in Rule 301 of the Federal Rules of Evidence.  15 U.S.C. § 1635(c) provides as follows:

> (c) *Rebuttable presumption of delivery of required disclosures.*
> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

15 U.S.C. § 1635(c).  Rule 301 of the Federal Rules of Evidence provides that:

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

*See Williams v. First Gov't. Mortgage and Investors Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000).  The burden of proof that plaintiffs must carry in order to overcome the presumption of delivery of two copies of the right to cancel notice has been described as a "low burden."  *See Cooper v. First Gov't. Mortgage and Investors Corp.*, 238 F. Supp. 2d 50, 64 (D.D.C. 2002).  Under both TILA and the Rules of Evidence, Plaintiff's signature on any TILA disclosures produced by Defendant creates no more than a rebuttable presumption which can be overcome at trial.

IV.  FRAUD IN THE INDUCMENT AND TORTIOUS MISREPRESENTATION ISSUES

The Federal Rules of Civil Procedure require that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  In the Sixth Circuit, a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted).  Further elaborating on the pleading requirements, the Sixth Circuit, in *United States v. Community Health Syst., Inc.*, 401 F.3d 493, 503 (6th Cir. 2007), recently explained:

> Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8.  Rule 8 requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." Rule 8 is commonly understood to embody a regime of "notice pleading" where technical pleading requirements are rejected in favor of an approach designed to reach the merits of an action. When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct.

*United States v. Community Health Syst., Inc.*, 401 F.3d 493, 503 (6th Cir. 2007) (internal citations omitted).  Under Tennessee Law, the elements of an action for fraud are:

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the misrepresentation [sic] falsity – that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

*Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566-67 (6th Cir. 2003), citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990).

Through his Complaint, Plaintiff has satisfied both the elements of a fraud action in Tennessee as well as the heightened pleading requirements of Fed. R. Civ. P. 9(b) as interpreted by the Sixth Circuit.  First, the numerous assurances made by Defendant Ameriquest through its agents regarding the terms of the new loan were intentional and material.  (*See* Compl. ¶¶ 8-9, 13, 19-21, 30.)  Second, Ameriquest and its agents never intended to keep their promises to lower the Plaintiff's payments and interest rate from his current mortgage while simultaneously adding to the loan amount by allowing Plaintiff to consolidate bills and get "cash out."  (*See id*. ¶¶ 8-9, 30-31.)  They did not intend to keep the promises because it is impossible to lower payments and interest rates while simultaneously increasing the size of the loan unless the loan includes an Adjustable Rate provision, wherein the interest rate and payments are only low for the opening period of the loan.  Because Ameriquest agents never revealed the Adjustable Rate nature of the proposed loan when they made their promises, their actions towards Plaintiff prior to the closing were fraudulent and misleading.  Third, Plaintiff reasonably relied on the multiple statements offered by Ameriquest and its agents and thereby suffered damages as a consequence. (*See id*. ¶¶ 23, 30-31.)  Finally, Plaintiff has shown that the misrepresentation of Ameriquest and its agents embody "a promise of future action without the present intention to carry out the promise."  *Shah*, 338 F.3d at 567.  At the very least, a genuine issue of material fact exists as to Defendant's intent.

As explained by the Court in *Community Health Systems*, Rule 9(b) is not to be construed as a straight-jacket.  Instead, it is to be read "in harmony," *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988), with Rule 8.  As stated by the Sixth Circuit in *Michaels*, "[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."  *Id. at* 679.  Through his Complaint, Plaintiff has pled more than enough

information to provide the Defendant fair notice of the substance of his claim and to allow the

Defendant to prepare a responsive pleading.


## V.  CONCLUSION

**WHEREFORE,** for the foregoing reasons, Plaintiff respectfully states that he has stated a claim

against Defendants for enforcement of his statutory rescission rights and for damages under the

Truth-in-Lending Act and under state law claims.


Respectfully submitted,


_/s/ Jessica Myers_____
Jessica Myers BPR #25595
David J. Tarpley, BPR #4059\
Legal Aid Society of Middle
          Tennessee & the Cumberlands
300 Deaderick Street
Nashville, TN 37201
jmyers@las.org
Phone: 615-780-7138
Facsimile: 615-244-4920

Counsel for *MARK DICKERSON*

**CERTIFICATE OF SERVICE**

I do hereby certify that on May 15, 2008, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following:

David W. Houston, BPR #20802
Katherine Knight Layhew, BPR #22274
Burr & Forman LLP
700 Two American Center
3102 West End Avenue
Nashville, Tennessee 37203

Counsel for *AMERIQUEST MORTGAGE COMPANY*
and *CITI RESIDENTIAL LENDING*

___/s/ Jessica Myers_____
Jessica Myers

14

# NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   September 23, 2005
LOAN NO.:   0133619882 - 5524
TYPE:   ADJUSTABLE RATE

BORROWER(S): Mark Edward Dickerson

ADDRESS:        25 Fairway Drive
CITY/STATE/ZIP:  Nashville,TN 37214

PROPERTY:   25 Fairway Dr
            Nashville,  TN  37214

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| _____ |

;

or

2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:     **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____        _____
SIGNATURE                                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

---

BORROWER/OWNER Mark Edward Dickerson        Date        BORROWER/OWNER        Date

BORROWER/OWNER        Date        BORROWER/OWNER        Date

**LENDER COPY**

1064-NRC (Rev 11/03)    
00000133619882040000050101

09/23/2005 3:47:41 PM

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 772892 (W.D.Mich.)
**(Cite as: 2007 WL 772892 (W.D.Mich.))**

Deans v. Long Beach Mortg. Co.
W.D.Mich.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D.
Michigan,Southern Division.
Lucille DEANS, Plaintiff,
v.
LONG BEACH MORTGAGE CO., Washington
Mututal and AIM Financial, Inc., Defendants.
No. 1:07-CV-205.

March 12, 2007.

Karen Merrill Tjapkes, Legal Aid of Western
Michigan, Grand Rapids, MI, for Plaintiff.

### OPINION

RICHARD ALAN ENSLEN, Senior United States
District Judge.
**\*1** This matter is before the Court on Plaintiff Lu-
cille Deans' Ex Parte Motion for Temporary Re-
straining Order to enjoin the foreclosure of the
Sheriff's sale of her house pursuant to Federal Rule
of Civil Procedure 65(b). Plaintiff requested exped-
ited consideration of the Motion as the Sheriff's
sale is to be held on March 14, 2007.

### I. BACKGROUND

Plaintiff's action alleges violations of the Truth in
Lending Act ("TILA"), 15 U.S.C § 1601*et seq.;* the
Real Estate and Settlement Procedures Act, 12
U.S.C. § 2601*et seq.;* Credit Repair Organizations
Act, 15 U.S.C. § 1679*et seq.;* and various state law
claims and seeks rescission of the mortgage as well
as monetary relief.

Plaintiff, who has owned her home since 1967, was
contacted by Defendant AIM Financial, Inc. regard-
ing the possibility of refinancing her mortgage.
Plaintiff alleges she was led to believe AIM could
give her a lower interest rate and monthly payment

while paying off her mortgage and other debts.
Plaintiff asserts she relied upon a Good Faith Es-
timate she was provided which were not the terms
she was eventually offered. Plaintiff closed on or
about April 24, 2006. Plaintiff alleges she did not
receive the closing documents prior to the closing
date and was rushed through signing the docu-
ments. Plaintiff did not realize that her new mort-
gage differed from the Good Faith Estimate in that
it was an adjustable rate mortgage, rather than
fixed, and it also left Plaintiff with much higher
monthly payments than had been previously repres-
ented. Further, Plaintiff later realized the applica-
tion she signed inflated her income. After closing,
Plaintiff was provided with a copy of TILA's
"Notice of Right to Cancel" which stated she had
three days to cancel the transaction. However, the
notice was lacking the pertinent dates.

On January 31, 2007, Plaintiff, through counsel,
sent a letter to Defendants Long Beach Mortgage
Company (the company which originated the loan)
and Washington Mutual (the Company which took
assignment of the mortgage loan) notifying them
she was rescinding the loan. Neither Defendant re-
sponded to this letter and have initiated non-judicial
foreclosure proceedings. Plaintiff's house is sched-
uled to be sold in a Sheriff's Sale on March 14,
2007.

### II. LEGAL STANDARD

In determining whether to issue a temporary re-
straining order under Federal Rule of Civil Proced-
ure 65, the court must consider four factors:

1) Whether the plaintiff has shown a strong or sub-
stantial likelihood or probability of success on the
merits;

2) Whether the plaintiff has shown irreparable in-
jury;

3) Whether the issuance of a preliminary injunction

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 772892 (W.D.Mich.)
**(Cite as: 2007 WL 772892 (W.D.Mich.))**

would cause substantial harm to others; [and]

4) Whether the public interest would be served by issuing a preliminary injunction.

*N.A.A. C.P. v. City of Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989); *see also Jones v. City of Monroe, Mich.,* 341 F.3d 474, 476 (6th Cir.2003); *United Food & Commercial Workers, Local 1099 v. Sw. Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir.1998).Rule 65 also requires in pertinent part:

**\*2** A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

FED. R. CIV. P. 65.

## III. ANALYSIS

Courts are counseled to make specific findings as to each factor, unless discussion of fewer factors will dispose of the issue. *G & V Lounge Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1076 (6th Cir.1994). Faithful to Sixth Circuit precedent, the Court has determined the following.

### A. Likelihood of Success on the Merits

Plaintiff asserts she has a strong likelihood of success in this matter because she is likely to succeed in her attempt to rescind the loan. Section 1635 of the TILA "provides that the obligor has three days from the date of either the transaction or the delivery of the information and rescission forms required by that section and the enforcing regulations,

whichever is later, to rescind the contract."*See Reynolds v. D & N Bank,* 792 F.Supp. 1035, 1037 (E.D.Mich.1992); 15 U.S.C. § 1635(a). Under section 1635(a) the creditor also has a duty to "clearly and conspicuously disclose ... to any obligor in the transaction subject to this section the rights of the obligor under this section."15 U.S.C. § 1635(a)."The statute clearly indicates that creditors shall provide to obligors notice of their rights of rescission and the forms for which to exercise those rights, in the manner prescribed by the regulations of the Board."*Reynolds,* 792 F.Supp. at 1037.

The time period to rescind can be extended for up to three years when the creditor fails to provide the obligor with the appropriate disclosures or notice. 15 U.S.C. § 1635(f). The TILA notice requirements, set forth in 12 C.F.R § 226.23, state that proper form of notice must include the date the rescission period expires. 12 C .F.R. § 226.23(d)(5). In the present action, Plaintiff asserts her notice did not include the date upon which her right to rescind would expire and has submitted a copy of the form which evidences this fact. (*See* Br., Ex. 1.) In *Reynolds,* a district court found:

merely providing the date of transaction followed by the statement that "You may cancel this transaction, without penalty or obligation, within three (3) business days from the above date" does not comply with the regulation, particularly when the notice provides for the date to be entered on a separate line which is left blank.

*Reynolds,* 792 F.Supp. at 1038;*see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n.,* 791 F.2d 699 (9th Cir.1986); *Williamson v. Lafferty,* 698 F.2d 767 (5th Cir.1983). In the present action, Plaintiff's notice is similarly devoid of the date of the transaction as well as the date upon which the right of rescission expired-both lines are left blank. Therefore, the Court finds that there is a likelihood of success on the merits on this issue.

### B. Irreparable Injury

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** It is clear that an irreparable injury will occur without a Temporary Restraining Order. First, the right to rescind the loan under TILA expires upon the voluntary or involuntary transfer of the property. 12 C.F.R. § 22.615(a)(3). Therefore, if the Sheriff's sale were to proceed, Plaintiff would have no chance in pursuing rescission of the loan. Further, if the sale is to proceed, not only will she lose ownership of her home, but Plaintiff asserts she will also likely be homeless. These factors weigh heavily in favor of issuing the temporary restraining order.

C. Balance of Harms

The Court finds that upon balancing the harm at risk in this circumstance, the harm Plaintiff will suffer is greater than that which would be suffered by Defendants. Plaintiff risks the immediate loss of ownership of her house, perhaps shelter, and also the loss of her right to rescission under TILA. Defendants, on the other hand, only risk a potential delay in the sale of the property in question. Therefore, the balance of harms also weighs in favor of issuing the temporary restraining order.

D. The Public Interest

Finally, Plaintiff argues that the public has an interest in having an orderly administration of justice as to this transaction. Plaintiff also asserts the public policy favors the proper adjudication of predatory lenders and practices against homeowners. The Court agrees. Further, the Court also believes public policy favors the preservation of a legal right until such determination can be made on its merits.

E. Bond

Pursuant to Rule 65, "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any

party found to have been wrongfully enjoined or restrained."Fed.R.Civ.P. 65(c). In the present case, Plaintiff is proceeding *in forma pauperis* and has a fixed monthly income. The Court finds in light of Plaintiff's financial circumstance and likelihood of success, no bond shall be required. *See United States v. Leasehold Interest in Prop.,* 743 F.Supp. 505, 507 (E.D.Mich.1990) (finding where Plaintiff proceeding *in forma pauperis* bond was waived accordingly.)

IV. CONCLUSION

After evaluating the proper factors and finding Plaintiff's counsel has properly submitted an affidavit certifying that immediate and irreparable injury will result on March 14, 2007, before the adverse party can be heard and detailing the efforts to give notice to the other party; the Court finds all factors weigh in favor of issuance of the Temporary Restraining Order, enjoining the scheduled Sheriff's sale of Plaintiff's residence. Therefore, bond is waived and a Temporary Restraining Order shall issue to preserve the *status quo* pending a hearing on the issue of whether a preliminary injunction should issue. A Temporary Restraining Order in accordance with this Opinion shall issue.

W.D.Mich.,2007.
Deans v. Long Beach Mortg. Co.
Slip Copy, 2007 WL 772892 (W.D.Mich.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Weeden v. AutoWorkersCreditUnion, Inc.
C.A.6 (Ohio),1999.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appear-
ing in the Federal Reporter. Use FI CTA6 Rule 28
and FI CTA6 IOP 206 for rules regarding the cita-
tion of unpublished opinions.)
United States Court of Appeals, Sixth Circuit.
James WEEDEN and Tina Weeden, Plaintiffs-Ap-
pellants,
v.
AUTO WORKERS CREDIT UNION, INC., De-
fendant-Appellee.
No. 97-3073.

March 19, 1999.

On Appeal from the United States District Court for
the Northern District of Ohio.

Before KEITH, SUHRHEINRICH, and DAUGH-
TREY, Circuit Judges.

PER CURIAM.
*1 The plaintiffs, James and Tina Weeden, appeal
the district court's denial of both their motion for
summary judgment, under Fed.R.Civ.P. 56, and
their renewed motion for judgment as a matter of
law and alternative request for a new trial, under
Fed.R.Civ.P. 50. Specifically, the Weedens claim
that they were entitled to judgment in their favor
because the defendant, AutoWorkersCreditUnion,
failed to provide them with the proper number of
copies of the Notice of Right to Cancel, as required
by the Truth-in-Lending Act (TILA), and because
accurate material disclosures had not been made on
the Truth-in-Lending statements that were provided
to them. The Weedens also contend that the district
court improperly instructed the jurors that if they
found that the Weedens were aware of their right to
cancel, they could not find a violation of the truth-
in-lending law merely because the Weedens were

not provided with more than one copy of their right
to cancel. We conclude that judgment for the
plaintiffs was appropriate, for failure to provide
sufficient copies of the required notice of the right
to cancel, and that the jury instruction to the con-
trary was legally erroneous.

PROCEDURAL AND FACTUAL BACK-
GROUND

In February 1993, the Weedens submitted a loan
application to the AutoWorkersCreditUnion to re-
finance the principal mortgage on their home, in or-
der to take advantage of falling interest rates.
Shortly after the Weedens submitted the applica-
tion, the Credit Union provided them with a "good
faith estimate of closing costs."The estimate was
based on an interest rate of 7.75 percent, two points
below their original mortgage, and did not list a
loan origination fee. The Credit Union encountered
difficulty in processing the Weedens' application
through Member Mortgage Company (to be under-
written by the Credit Union National Association,
or CUNA), because James Weeden was unem-
ployed at the time the Weedens applied for the loan
and because there were problems with the amount
of acreage of the Weedens' property

In April 1993, the Weedens resubmitted a loan ap-
plication to the Credit Union, which then switched
lenders and began working to process the loan dir-
ectly with CUNA. Through CUNA, the Weedens
were able to get an even more favorable interest
rate of 7.5 percent, with a $450 loan origination fee.
Rebecca Long, loan officer at the Credit Union,
testified that on May 23, 1993, the Weedens were
given a second estimate of closing costs, which lis-
ted the 7.5 percent interest rate and the $450 fee.
The loan was scheduled to close on June 11, 1993,
with a title agency chosen by the Weedens.

At trial, Tina Weeden testified that neither she nor
her husband had ever received the estimate of clos-

173 F.3d 857, 1999 WL 191430 (C.A.6 (Ohio))
**(Cite as: 173 F.3d 857, 1999 WL 191430 (C.A.6 (Ohio)))**

ing costs with the 7.5 percent interest rate and the loan origination fee and did not learn about the origination fee or the new interest rate until they arrived at Midland Title Company on June 11. At that point, the Weedens vociferously protested that they had not agreed to pay such a fee and left Midland Title to speak with Wes Volz, the manager of Auto-WorkersCreditUnion, who agreed-after extended and apparently heated discussion-to remove the fee.

**\*2** After meeting with Volz, the Weedens returned to Midland Title to complete the closing. They crossed out the $450 origination fee on the TILA statement and initialed the change. According to the defendant, the removal of the $450 from the loan changed all the figures listed in the TILA statement because it resulted in a very slight modification of the interest to be paid. By the time this discrepancy arose, however, it was too late in the afternoon to secure a recalculated statement from the Credit Union. The closing agent at Midland Title, Sally Dennison, testified that she explained to the Weedens that by signing the compliance agreement, they were agreeing to assist the AutoWorkersCreditUnion, the lender, in getting the slightly incorrect documents corrected at a later time. Dennison said that she was confident that, upon leaving Midland Title, the Weedens understood that they might have to re-execute another TILA statement.

The deed was filed and the loan checks were disbursed on June 17, 1993. The Weedens received an amended TILA statement and a second notice of the right to cancel from the Credit Union in mid-July. (There is some dispute about the date of this Notice of Right to Cancel. The defendants insist that they dated and sent it on July 9, indicating on the form that the three-day right of rescission would expire on July 15. The plaintiffs claim that they did not receive it until July 19, thereby extending the deadline to July 22.) The Weedens did not sign the revised TILA statement because, according to Tina Weeden, the figures on the statement were still inaccurate and, perhaps more significantly, because interest rates had dropped by another full point

since the closing. She testified that rather than sign the TILA statement, she chose to exercise her right to cancel the loan.

According to her testimony, Tina Weeden went to the Credit Union office on July 21, 1993, and handed a teller an envelope containing the executed right-to-cancel form. The Credit Union insists that it has no record of the Weedens' attempt to cancel or rescind the loan, noting that Tina Weeden is the only person who has a copy of the signed notice that she allegedly delivered to the bank.

On August 17, 1993, purportedly unaware of the Weedens' desire to rescind, the Credit Union's attorney wrote to the Weedens requesting again that they sign the TILA statement, pointing out that the mortgage could not otherwise be finalized. The letter referred the Weedens to the compliance agreement which they signed on June 11 and notified them that without their signatures on the modified TILA statement, the loan could not be sold on the secondary market. The Weedens did not respond to this letter.

In the meantime, the Credit Union had started billing the Weedens for loan payments on a monthly basis. Tina Weeden testified that after the first couple of months, she began writing "right to cancel" on "numerous" monthly payments and, in December 1993, also sent the defendant a telegram claiming exercise of her right to rescind. In April 1994, the Weedens received approval from another mortgage company for a loan at 7 percent interest, to be held open for 30 days pending release of the Credit Union mortgage on the property. The Weedens sent the Credit Union a letter to the attention of Wes Volz, Manager, demanding a meeting with Volz. It was signed by both Weedens and stated:

**\*3** At this meeting you are to be prepared with a properly executed release of mortgage as is required by Federal Law to reflect the termination of the security interest being held in the Weeden home.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

You are also to be prepared to pay all funds owed the Weeden's [sic] under Federal statute. Including but not limited to all interest and finance charge paid to date, and likewise you are to except [sic] all payments owed to Auto Workers Credit Union and its assigns.

The sole purpose of this meeting is for the Auto-WorkersCreditUnion to provide the Weeden's [sic] a clear and marketable title on their home as is required by law.

Mr. Volz testified that, on the advice of counsel, he did not schedule a meeting with the Weedens as requested in their letter.

The Weedens then filed this lawsuit in February 1994 and moved for summary judgment on the basis of the defendant's failure to recognize Tina Weeden's rescission of the mortgage transaction. In their summary judgment motion, the Weedens also argued that defendants violated the Truth-in-Lending Act by not giving them each the proper number of the Notice of Right to Cancel and by failing to give them a TILA statement containing accurate material disclosures. Based on the latter fact, they argued, their right to rescind the mortgage transaction should be preserved until July 19, 1996, three years from the date of this transaction. The district court denied the motion by marginal entry order, and the case went to trial.

The jury entered a unanimous decision in favor of Auto Workers Credit Union, and the district judge entered judgment based on the jury's verdict. The Weedens moved for judgment as a matter of law and, in the alternative, for a new trial, which the district court also denied by marginal entry order. The plaintiffs now appeal.

## ANALYSIS

The denial of a motion for summary judgment is not reviewable where the moving party subsequently loses on the trial of the merits. *See Jarrett v. Epperly,* 896 F.2d 1013, 1016 (6th Cir.1990).

However, the denial of a renewal of that motion pursuant to Rule 50, Fed.R.Civ.P., may be appealed.

The primary thrust of the plaintiffs' legal challenge revolves around the issue of whether they had properly rescinded the mortgage transaction. The general rule is that a residential mortgage transaction or the refinance of a residential mortgage transaction is not rescindable. However, the Weedens fit into an exception to this rule that allows rescission of a refinance of a residential mortgage by a creditor other than the original creditor.Regulation Z § 226.23(f); Commentary to § 226.23(f). Rescindable transactions may be rescinded at any time up to midnight of the third business day following the later of: (1) consummation of the transaction, (2) delivery of the notice informing the consumer of the right to rescind, or (3) delivery of all material disclosures. Regulation Z § 226.23(a). Although the Credit Union's revised TILA statement and notice of right to cancel indicated that the three-day deadline was July 15, 1993, Tina Weeden contended that she did not receive the notice of her right to cancel until July 19, which would extend the deadline beyond the date of July 21, when she purportedly served notice of cancellation. To back up this contention, she submitted an envelope from the Credit Union-in which she said the revised TILA statement was received-postmarked July 15.

**\*4** As it turns out, we need not resolve this dispute because we conclude that judgment should have been granted in favor of the plaintiffs on a different and more certain basis, i.e., that the Credit Union failed to give the Weedens the proper number of notices of the right to rescind.[FN1] This failure to deliver the notices extends the rescission period for three years from the date of the transaction.

> FN1. James Weeden never received a Notice of Right to Cancel, although he should have received two for the first loan application and two for the second. Tina Weeden received only two of the four notices to which she was entitled-one on June 11,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993, and the other on July 15, 1993.

The Truth-in-Lending Act establishes a right of rescission for any loan transaction in which the borrower's principal dwelling is used as security. 15 U.S.C. § 1635(a). The rescission period extends until "midnight of the third business day following consummation [of the loan], delivery of the notice [of right to rescind], or delivery of all material disclosures, whichever occurs last."12 C.F.R. § 226.23(a)(3). Under TILA regulations, a creditor is required to "deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind."12 C.F.R. § 226.23(b)(1)."If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation."12 C.F.R. § 226.23(a)(3).

Although we have not previously addressed the specific issue in this case, we have joined other federal courts of appeals in holding that the Truth-in-Lending Act must be liberally construed in favor of the borrower in order to effectuate the purpose of the statute-to avoid the uninformed use of credit. *See, e.g., Purtle v. Eldridge Auto Sales, Inc.,* 91 F.3d 797, 800 (6th Cir.1996), *cert. denied,*117 S.Ct. 2411 (1997); *Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989); *Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir, 1983). Even technical or minor violations of the Act impose liability on the lender. *See Jackson,* 890 F.2d at 120.

Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act."*Watkins v. Simmons and Clark, Inc.,*618 F.2d 389, 399 (6th Cir.1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

**\*5** In its second response, the Credit Union urges us to consider the Congressional debates behind a 1995 amendment to the Truth-in-Lending Act in which Congress declared a temporary moratorium on courts' certification of class action suits based on certain kinds of alleged deficiencies in the form of notice. *See*15 U.S.C. § 1620(i). In these debates, legislators expressed their wish to eliminate situations in which "small violations of the disclosure requirements of the Truth-in-Lending Act triggered the right of rescission provided by the Act." 141 Cong. Rec. No. 153 S14567 (September 28, 1995); *see also*141 Cong. Rec. H9513, H9514 (daily ed. Sept. 27, 1995) (statement of Rep. Leach) ("The problem is that an honest mistake of no consequence to any of the parties involved has become the subject of shark instincts of the plaintiff's bar.")

We conclude, however, that the Credit Union's reliance on this amendment and its legislative history is flawed. First, the amendment was passed two years after the transaction giving rise to this lawsuit. Second, even if we were to consider the amendment applicable, it would not eliminate either the creditor's obligation to provide each borrower with two notices of the right to cancel or the three-year extension of the right to rescind upon failure to provide these notices. At most, the discussion surrounding passage of the amendment indicates that Congress wishes to have courts move away from what it considers in hindsight to be a "hypertechnical" reading of the Truth-in-Lending Act. *See Smith v. Highland Bank,* 108 F.3d 1325,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1327 n. 4 (11th Cir.1997). We can only conclude that the scope and effect of congressional intent in this area remain to be seen.

Nevertheless, from our foregoing analysis one thing is clear, and that is that the district judge erred in instructing the jury that they could not find a violation of the law if the plaintiffs were aware of their right to cancel, regardless of the number of notices that the plaintiffs may or may not have received from the defendant. Because of a closing document, entered as an exhibit at trial, that bore both James and Tina Weeden's signature below a statement indicating that they had been made aware of their right to cancel, the instruction clearly doomed any opportunity that the plaintiffs had to succeed in securing a favorable verdict that would force rescission of the loan. While TILA provides for this form of equitable relief, as we have previously noted, it does not permit the raising of equitable defenses, even in cases with "unsympathetic facts." *Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 704 (9th Cir.1986). It follows that there was no legal basis for this particular instruction, and it cannot be considered harmless.

CONCLUSION

Despite the error in the jury charge, however, we conclude that a retrial in this case is unnecessary because, at oral argument before this court, all parties appeared to agree that rescission of the loan and restoration to their original positions would constitute a fair resolution of their dispute. We therefore VACATE the judgment of the district court and enter judgment in favor of the plaintiffs. Further, we REMAND to the district court with instructions to order rescission of the loan; the defendant's return to the Weedens of all funds paid in, with interest; and the Weedens' return to the Credit Union of the original proceeds of the mortgage, with interest. Because rescission is the relief the Weedens have consistently sought-according to them ever since July 1993-we decline to order the payment of statutory damages in this case. *Cf.*

*Stone v. Mehlberg,* 728 F.Supp. 1341, 1349-50 (W.D.Mich.1989). However, because the plaintiffs are the prevailing parties in this action, the district court must also assess attorneys' fees and costs in their favor.

C.A.6 (Ohio),1999.
Weeden v. Auto Workers Credit Union, Inc.
173 F.3d 857, 1999 WL 191430 (C.A.6 (Ohio))

END OF DOCUMENT